RECEIVED IN ALEXANDRIA, LA.
JUL 22 2009
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| BAYOU OUTDOORS, INC. | CIVIL ACTION NO. 06-0343 |
| -vs- | JUDGE DRELL |
| ZORN MOLDS, INC. | MAGISTRATE JUDGE KIRK |

## REASONS FOR JUDGMENT

The above captioned matter came before this court as a one-day bench trial on April 9, 2009. Having received all the relevant evidence and after taking the case under advisement, we enter judgment for plaintiff in the amount of $32,560.00.

I. **Background**

Plaintiff, Bayou Outdoors, Inc. ("Bayou Outdoors"), manufactures and sells plastic fishing baits wholesale to sporting goods stores for retail sale to the general public. Defendant, Zorn Molds, Inc. ("Zorn"), manufactures and sells custom injection machines and molds used by bait manufacturers such as Bayou Outdoors. Plaintiff had found a relative degree of success in manufacturing two-color baits and lures by using defendant's injection machines, and contacted Zorn to provide Bayou Outdoors with two new three-color injection machines which would enable the company to produce three-color baits and lures.[1] The two machines were delivered in February 2005.

---

[1] The custom injection machines were ordered on specification by the prior owner of Bayou Outdoors, but were paid for and received by the current owner, Mr. Ken Starks.

Plaintiff, however, claims that nearly the entire year after delivery was marred by electrical and mechanical problems with the machines rendering impossible the production of marketable three-color baits at all. Plaintiff further alleges that even after they were serviced—the period of time from December 2006 or January 2007 until the present—the two machines defendant custom built for plaintiff were only capable of manufacturing marketable quantities and qualities of two-color baits. Because of this failure, Bayou Outdoors framed this suit for redhibitory defects in the machines in Louisiana state court. The suit having been removed here, plaintiff seeks rescission of the sale or, in the alternative, the difference in price between what it received (two-color injection machines) and what it bought (three-color injection machines). Zorn, however, argues in its defense that the two injection machines did and do work properly so as to enable the production of three-color baits.

Zorn also counterclaims against plaintiff. The counterclaim seeks to prove that Bayou Outdoors remains obligated for a $5,494.00 balance on the price of the two machines, as well as for $1,784.00 for certain repairs or alterations to one of the bait molds sold with the machines. Bayou Outdoors counters that neither amount is owed. The plaintiff's complaint and defendant's counterclaim must each be analyzed in turn.

## II. Analysis

### A. Plaintiff's Redhibition Claim

Defendant removed plaintiff's suit to federal court on diversity grounds. This court exercises its diversity jurisdiction here over a Louisiana plaintiff's complaint for rehibitory defects in items sold to it by an Alabama corporate defendant. Thus, Louisiana's substantive law controls this dispute. *See, e.g., Moore v. State Farm*, 556

F.3d 264, 269–71 (5th Cir. 2009) (giving sources of and interpretive principles for Louisiana substantive law as applied in a federal court sitting in diversity). The Louisiana Civil Code provides a buyer of a defective thing sold to him with an action in redhibition, with the remedy dependent upon the degree of defect:

> The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
>
> A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.
>
> A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.

LA. CIV. CODE ANN. art. 2520 (1996); see also Young v. Ford Motor Co., 595 So. 2d 1123, 1127–28 (La. 1992) (comparing Roman origins of redhibition and its function of buyer protection from latent defects with the common law doctrine of *caveat emptor*—foreign to Roman law—which provided no protection to buyers in the absence of a warranty of goods against defect and the buyer's detrimental reliance thereupon). As will be discussed below, we find that plaintiff has proved by a preponderance of evidence that the two machines sold to Bayou Outdoors suffered from redhibitory defects. But, redhibitory defects may differ in degree, and as per article 2520, whether a defect renders a thing sold totally useless or simply diminishes its usefulness determines the appropriate remedy to the buyer.

Relying on this statutory framework, we find that the two injection machines Zorn manufactured and sold to Bayou Outdoors were not "totally useless" as envisioned by

3

article 2520. The evidence at trial showed that the machines did not and do not produce a three-color bait product of marketable quality. But they do produce good two-color baits. As the president of Bayou Outdoors testified at trial, the soft plastic bait industry is driven by volume. Further, plaintiff's ability to deliver large quantities of marketable product to retailers with consistency is essential to the success of his operations. Bayou Outdoors' two-color products were successful and sought after by plaintiff's client retailers. To meet the demand for its product and to satisfy contractual obligations, plaintiff has been shooting two-color bait products out of the two subject Zorn injection machines since the date of repair (after the alleged initial period of mechanical and electrical failures). Thus, the machines cannot be said to be defective to the degree that they are "totally useless." For this reason, we find that total rescission of the sale is not warranted. This determination is the easy part. Because of the evidence adduced at trial, however, the rest is more difficult.

The defects in this case definitely "diminishe[d] [the machines'] usefulness or [] value." LA. CIV. CODE ANN. art. 2520 (1996). No one disputes that plaintiff bought the machines for the specific purpose of producing three-color baits. The evidence shows that Bayou Outdoors had to settle for producing two-color baits. Because plaintiff continued using the "diminished" machines to increase production of marketable two-color product, however, "it must be presumed that [Bayou Outdoors] would still have bought [the machines,] but for a lesser price." Id. In this case, the "lesser price" is the cost of a two-color injection machine. Plaintiff's remedy for the redhibitory defects in the machines, then, is in the difference in cost between the two three-color machines and

4

the cost of two two-color machines. This is the portion of the civil law remedy known commonly as *quanti minoris*.

The evidence on damages is scanty. However, evidence does show that each of the two three-color plastic injection machines purchased by Bayou Outdoors cost $41,280.00.[2] Total cost for the two was $82,560.00.[3] Regarding the cost of a two-color machine, unopposed trial testimony from its president shows that Bayou Outdoors had a comparative quote from United Machine Works in Crawford, Arkansas of "a little over $20,000 apiece" for a two-color injection machine. Unfortunately plaintiff did not provide more specificity as to how much "a *little* over $20,000" is. And neither party provided evidence as to the cost of a Zorn two-color machine.

In cases of this nature, where damages are not proved with exacting specificity, but where some damage is shown by a preponderance of the evidence, the court's discretionary role as fact-finder is to make the best determination possible under the circumstances. *See, e.g., Gradnigo v. La. Farm Bureau Cas. Ins. Co.*, 6 So. 3d 367, 372–73 (La. App. 3 Cir. 2009) (citing *Youn v. Maritime Overseas Corp.*, 623 So. 2d 1257 (La. 1993), cert. denied, 510 U.S. 1114 (1994), for the proposition that "the award should be determined by the facts or circumstances particular to the case under consideration").

---

[2] We note that shipping charges of $2,145.00 are documented for the two machines. (And other evidence suggests that these charges were waived.) In any event, we assume these charges would apply whether two- or three-color machines were shipped.

[3] Plaintiff also purchased six "molds" from Zorn. Molds are custom-made cartridges with multiple empty cavities inside them in the shape of plaintiff's bait products—one mold has cavities in the shape of "frogs" and another "worms," etc.—into which the machines inject soft plastic. Each mold is custom-sculpted to a customer's design specifications from aircraft aluminum (to support the extreme heat and pressure of the injection molding process). The six molds in this case each cost anywhere from more than five thousand to almost nine thousand dollars to produce. This increased the total transaction price, including the two machines, to $117,271.00.

Therefore, we determine the price of the two new two-color machines to be $25,000.00 each and apply that figure in our future damage computations. In this case, it would be conceivable that there could be a further adjustment to the *quanti minoris* loss if there were evidence of comparative profit equality, loss, or gain. For our purposes, however, there is no evidence one way or the other that Bayou Outdoors' sales of three-color bait would have been of greater, lesser, or equal value than sales of its two-color baits. Likewise, there is evidence of downtime during the first year of the machines' use. In either event the point is moot, since plaintiff indicated at trial that damages for future profit loss or damages resulting from the period of downtime—initially claimed by plaintiff (*see* Ex. 9)—were no longer sought as relief from the court. Considering all these observations, the *quanti minoris* award of $32,560.00 is appropriate.

### B. Defendant's Counterclaims

As noted above, Zorn filed a counterclaim alleging that Bayou Outdoors remained obligated for a $5,494.00 balance on the price of the two machines. Zorn also counterclaimed for $1,784.00 for the cost of aluminum to repair or alter one of the six molds that was sold along with the machines. Each amount claimed by Zorn will be treated separately.

#### 1. Outstanding Balance of $5,494.00

Zorn claims that Bayou Outdoors owes $5,494.00 representing an outstanding balance on the total transaction price for the two machines and six molds originally ordered. Zorn produced internal accounting documents showing an outstanding balance in this amount. In its defense, Bayou Outdoors called its accountant, Mr. David Petty, as a witness to explain why plaintiff did not owe this amount. He explained that Zorn

had simply failed to credit Bayou Outdoors for a payment by check for $5,894.00 from the United States Small Business Administration ("SBA") on Bayou Outdoors' behalf with Zorn as the payee. Mr. Petty testified that Bayou Outdoors had been the recipient of an SBA loan for several hundred thousand dollars while under prior management. So as to zero out the remaining line of credit between Bayou Outdoors and the local SBA lender, the SBA authorized the payment directly to Zorn for $5,894.00. This was not a direct "payment" for a particular machine or a particular mold ordered by Bayou Outdoors; the check was memorialized simply as "partial payment equip. purchase." No documents produced by Zorn show a credit to Bayou Outdoors for this amount, nor do they offer an alternative to plaintiff's offered evidence of full payment. In light of the convincing explanation given by plaintiff's accountant, which he supported by evidence (reflected in Ex. 25, at pp. 3, 6), we find that defendant has not proven its counterclaim for $5,494.00 by a preponderance of the evidence and the claim will be denied.

### 2. $1,784.00 for Mold Alterations

Zorn also claims that Bayou Outdoors owes $1,784.00 for alterations to a custom tube mold ordered by Bayou Outdoors. There was testimony that, without modification, this custom tube mold would infringe upon another bait manufacturer's patent for the method of producing this type of tube bait, and Zorn proposed to Bayou Outdoors a certain modification to the mold that would cost $1,784.00. However, testimony was elicited at trial from the president of Zorn that the changes were in fact never made and that this particular mold is still in Zorn's custody. As such, Zorn's counterclaim for the $1,784.00 will be appropriately denied.

7

### III. Loss Calculation

Accordingly, we calculate the *quanti minoris* loss in the case to be as follows:

| Cost of two three-color machines | $ 82,560.00 |
|---|---|
| Less cost of two two-color machines | $ 50,000.00 |
| *Quanti minoris* loss | **$32, 560.00** |

Zorn owes this refund amount to Bayou Outdoors.

### IV. Conclusion

For the foregoing reasons this court will award judgment in favor of plaintiff Bayou Outdoors in the amount of $32,560.00 by separate judgment.

SIGNED on this 22nd day of July, 2009 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE